UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RAQUEL HOLMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-1836 (RMC) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**OPINION**

Raquel Holman, a special education student who is now over the age of 18, complains that the District of Columbia Public Schools (DCPS) denied her a free appropriate public education (FAPE) in violation of the Individual with Disabilities Education Act (IDEA), as modified by the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq*. An Independent Hearing Officer found that DCPS failed to provide Ms. Holman her prescribed specialized instruction for her last year of high school and that DCPS excluded Ms. Holman and her guardian from certain meetings concerning Ms. Holman's education. Despite these findings, the Hearing Officer refused to order compensatory education as a remedy because Ms. Holman had graduated from high school and, therefore, he concluded that DCPS's actions did not cause her any harm.

Ms. Holman now moves for summary judgment and asks the Court to award her compensatory education. *See* MSJ [Dkt. 9]. DCPS filed a timely opposition to the motion, to which Ms. Holman replied. For the reasons that follow, the Court will grant Ms. Holman's motion for summary judgment and reverse in part the Hearing Officer's decision as contrary to the evidence and the law.

1

# I.  FACTS

## A.  Statutory Framework

In general, IDEA "aims to ensure that every child has a meaningful opportunity to benefit from public education." *Boose v. District of Columbia,* 786 F.3d 1054, 1056 (D.C. Cir. 2015).  The statute ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  Under IDEA, school systems must promptly identify, locate, and evaluate every child with disabilities residing in the district who is in need of special education and related services.  *Id*. § 1412(a)(3)(A).  Once a disabled child is identified, the child's parents, teachers, school officials, and other professionals collaborate in an "IEP team" to develop an individualized education program (IEP) to meet the child's unique needs. *See id.* §§ 1412(a)(4), 1414(d)(1)(B).

The IEP is a written statement that is reviewed annually and includes goals and instructional objectives for the student's education, services to be provided, projections regarding the dates on which such services are to be offered, and criteria for evaluating whether instructional objectives are met.  *Id*. §§ 1401(14), 1414(d)(1)(A); *see also Honig v. Doe*, 484 U.S. 305, 311 (1988).  The IEP team may determine that in order to benefit from special education, the student requires "related services" — *i.e.,* non-educational, supportive services such as physical and occupational therapy and psychological counseling. *See id*. § 1414(d)(1)(B); 34 C.F.R. § 300.24(a).  "[T]he IEP must, at a minimum, provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction . . . ." *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 519 (D.C. Cir. 2005).  IDEA also requires that "[a]s soon as possible following development of the IEP, special education and

related services are made available to the child in accordance with the child's IEP." *Honig*, 484 U.S. at 311.

To determine whether a FAPE has been provided, courts must determine whether: (1) the school complied with the IDEA's procedures; and (2) the IEP developed through those procedures was reasonably calculated to enable the student to receive educational benefits. *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 (11th Cir. 2003). While the District of Columbia is required to provide a FAPE to disabled students, it is not required to, and does not guarantee, any particular outcome or any particular level of academic success. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia,* 510 F. Supp. 2d 97, 100 (D.D.C. 2007).

IDEA is "violated when a school district deviates *materially* from a student's IEP." *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 275 (D.D.C. 2011) (emphasis in original) (citations omitted). "A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007); *see also Turner v. District of Columbia*, 952 F. Supp. 2d 31, 40 (D.D.C. 2013). Moreover, "the materiality standard *does not require that the child suffer demonstrable education harm* in order to prevail." *Wilson*, 770 F. Supp. 2d at 275 (emphasis in original) (quoting *Van Duyn*, 502 F.3d at 822). Instead, "it is the proportion of services mandated to those provided that is the crucial measure for purposes of determining whether there has been a material failure to implement." *Turner*, 952 F. Supp. 2d at 41 (citing *Wilson*, 770 F. Supp. 2d at 775).

3

If a parent objects to the identification, evaluation, or educational placement of a disabled child, or whether she is receiving a FAPE, the parent may seek a due process hearing before a D.C. Hearing Officer, who issues a determination known as a Hearing Officer Decision. 20 U.S.C. §§ 1415(b)(6), 1415(f)(1)(A). If a party is dissatisfied with that decision, it may appeal to a D.C. court or federal district court. *See id.* § 1415(i)(2)(A). In terms of a remedy or relief, "[w]here a school system fails to provide special education or related services, a student is entitled to compensatory education." *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 30 (D.D.C. 2001) (citations omitted). Compensatory education consists of prospective services "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524.

    **B. Background**

Ms. Holman was at all relevant times a DCPS student eligible for special education under IDEA. *See* Administrative Record [Dkt. 8] (AR) at 114 (May 30, 2013 IEP Team Meeting). She attended Dunbar High School in her sophomore (2012-2013) and junior (2013-2014) years in high school. *Id.* Tracy Holman, Ms. Holman's grandmother, was her guardian and participated in meetings concerning Ms. Holman's education. In the spring of 2013, Ms. Holman was also represented by Attorney Nicholas Ostrem.

DCPS had provided Extended School Year (ESY) education to Ms. Holman over the course of one or more summers at unspecified times before she entered high school. On April 19, 2013, Dr. Courtney Davis, Dunbar's special education coordinator, contacted Mr. Ostrem by email about scheduling a meeting to discuss ESY education for Ms. Holman during the summer of 2013. *See id.* at 208. He suggested three dates for a meeting. *Id.* On April 23, 2013, Mr. Ostrem expressed some doubt regarding the need for ESY services for Ms. Holman

and told Dr. Davis that he did not think a meeting was necessary, but that he would talk to Ms. Holman and her grandmother to see whether Ms. Holman "would benefit from ESY." *Id.* Mr. Ostrem and Dr. Davis continued to exchange e-mails to discuss whether a meeting and ESY education were necessary.

On April 26, 2013, Mr. Ostrem informed Dr. Davis that Tracey Holman "believes [Raquel] does require ESY services (although she's not 100% sure that she will be able to take advantage of them given her summer schedule). That being the case, please amend the IEP to add ESY services, and then send me a copy." *Id.* at 211 (April 26 E-mail). That was not the end of the matter. Dr. Davis responded that he needed "to schedule a meeting with the team as ESY services may be deemed unnecessary for the student" and told Mr. Ostrem to "choose an identified date and time." *Id.* Mr. Ostrem was incredulous and answered: "Why would she not qualify for ESY — it was on her IEP last year?" *Id.* Mr. Ostrem also indicated that, while he did not think a meeting was necessary, he was not available on the identified dates and times and proposed alternative dates for the meeting. *Id.* On May 7, 2013, DCPS convened a meeting without the presence of Ms. Holman, her grandmother, or Mr. Ostrem. *Id.* at 99 (May 7, 2013 IEP Team Meeting). During the meeting, DCPS amended the IEP and determined that Ms. Holman did not need ESY services for the summer of 2013. *Id.*

On May 30, 2013, DCPS held a second meeting without any representative of Ms. Holman present. *See* May 30th IEP Team Meeting. In that meeting, DCPS declined to prescribe ESY education in the new 2013-2014 IEP. *Id.* at 124 (ESY in IEP). As part of the new IEP, DCPS continued to prescribe 13.3 weekly hours of specialized instruction in a general education setting. *Id.* at 121 (Services in IEP). However, DCPS failed to provide the specialized instruction in school year 2013-2014 as required. Instead, DCPS scheduled a special education

5

teacher to be present in Ms. Holman's classroom only for one class every other day for a total of 3.75 hours per week. *See* Tr. of Due Process Hearing [Dkt. 8-8] (Hearing Tr.) at 100-104. Ms. Holman has shown without opposition that the teacher missed at least one class per week and when she was there, the teacher failed to stay for the entire class. *Id.* In addition, the teacher failed to check if Ms. Holman needed extra help and did not provide help when Ms. Holman requested it. *Id.*

Despite these failures, Ms. Holman passed all of her classes and graduated from high school in three years, at the end of the 2013-2014 academic year. *See* AR at 386-391 (Diploma and Report Cards). She graduated with a cumulative grade point average of 2.23 and a ranking of 60th in a class of 130 students. *Id.* However, Ms. Holman's reading and writing skills ranged from the first-grade level to less than the seventh-grade level. *See id.* at 169 (2014 Psych. Evaluation); *id*. at 201-203 (Testing Summary). Also, between May 17, 2013 and June 16, 2014, without real special education assistance, Ms. Holman's academic skills declined in five of six areas. *Compare id.* at 165 (WJ-III 2013 Test Scores) *with id.* at 182 (WJ-III 2014 Test Scores). According to Ms. Holman's DCPS teachers, at her high school graduation, Ms. Holman was "at the [4th] grade reading level." *Id.* at 376 (DCPS Progress Summary).

On May 20, 2014, Ms. Holman filed a due process complaint under the IDEA alleging that DCPS failed to implement her IEP and did not give her the opportunity to participate in certain meetings. *Id.* at 4-9 (Due Process Complaint). On July 16, 2014, Ms. Holman had her due process hearing and presented three witnesses. *See* Hearing Tr. at 3. DCPS did not present any witnesses. *Id.* On August 4, 2014, the Hearing Officer issued his decision that acknowledged DCPS's failure to implement Ms. Holman's IEP, but held that DCPS did not deny Ms. Holman a FAPE. *See* AR at 428-439 (HOD). Specifically, the Hearing Officer held

DCPS harmless because Ms. Holman had already graduated and there was no indication that Ms. Holman required ESY or that she "regress[ed] . . . during the last school year." *Id.* at 437. The Hearing Officer also found that DCPS's failure to implement the IEP as prescribed was only a *de minimis* error and did not constitute a denial of FAPE. Accordingly, the Hearing Officer denied all relief, including compensatory education. Ms. Holman filed the Complaint at bar to appeal the Hearing Officer's Decision and seek compensatory education. *See* Compl. [Dkt. 1]. She now moves for summary judgment.

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. Since "[c]redibility determinations, the weighing of inferences and the drawing of inferences from the facts are jury functions," the court must deny summary judgment to the extent that reasonable minds could differ over the import of the evidence. *Id*. at 250-51, 255.

In an IDEA case, a court must review the administrative record and it may hear additional evidence at the request of a party; the court bases its decision on the preponderance of the evidence, granting such relief it deems appropriate. 20 U.S.C. § 1415(i)(2)(B)(iii). A court

gives "due weight" to the Hearing Officer decision and does not substitute its own view of sound educational policy for that of the hearing officer. *See Rowley,* 458 U.S. at 206. Moreover, the burden of proof is with the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid,* 401 F.3d at 521 (quoting *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C. Cir. 1988)). If neither party requests that the court hear additional evidence, then the court may determine the case based on the administrative record on summary judgment. *Heather S. v. Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997). Here, neither party has requested that the Court hear additional evidence; thus, the Court bases its decision on its review of the Administrative Record.

### III. ANALYSIS

The Hearing Officer found that DCPS failed to implement Ms. Holman's IEP during the 2013-2014 academic year and that DCPS convened the May 7th and May 30th meetings without the presence of Ms. Holman or her legal guardian. *See* HOD. According to Ms. Holman, these findings compel a determination that DCPS denied her a FAPE in violation of IDEA. Ms. Holman contends that the Hearing Officer's decision denying her compensatory education was wrong as a matter of law. DCPS opposes Ms. Holman's position and asks the Court to sustain the Hearing Officer's decision.

**A. DCPS's Failure to Implement Ms. Holman's IEP**

DCPS concedes that Ms. Holman's 2013-2014 IEP was not implemented as prescribed. *See* Opp'n [Dkt. 10] at 6 (citing AR at 436). However, without much specificity or explanation, DCPS claims that its failure to implement the IEP was *de minimis. See id.* The Court disagrees.

The Supreme Court has described the IEP as "[t]he primary vehicle for implementing the[] congressional goals" identified in IDEA. *Honig,* 484 U.S. at 311. It follows

that a school district's adherence to the prescribed IEP is essential to a child's educational development under IDEA. IDEA "is violated when a school district *materially* deviates from a student's IEP." *Wilson*, 770 F. Supp. 2d at 275 (emphasis in original) (citations omitted). A deviation is considered to be "material . . . when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." *Van Duyn*, 502 F.3d at 822. To determine "whether there has been a material failure to implement" an IEP, courts must look at "*proportion of services mandated to those provided.*" *Turner*, 952 F. Supp. 2d at 41 (citing *Wilson*, 770 F. Supp. 2d at 775) (emphasis added).

In the instant case, there is no question that DCPS materially deviated from Ms. Holman's 2013-2014 IEP. Ms. Holman's IEP prescribed 13.3 weekly hours of special instruction. *See* Services in IEP. It is undisputed that DCPS scheduled a special education teacher to be present in Ms. Holman's classroom only for one class every other day for a total of 3.75 hours per week. *See* Hearing Tr. at 100-104. Since the teacher missed at least one class per week, it follows that DCPS only provided Ms. Holman with special instruction for 2.25 hours per week, that is, 17% of the prescribed hours. *See id.* Since DCPS failed to provide 83% of the required services, it cannot be seriously argued that its failure to implement the IEP was *de minimis*.[1] This is a material deviation from the 2013-2014 IEP. *Cf. Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 34 (D.D.C. 2012) (finding there was no material deviation from the child's IEP where the student received 97% of the prescribed hours).

DCPS agrees with the Hearing Officer that this failure did not amount to a denial of FAPE because Ms. Holman graduated from high school and because there is "no evidence that

---

[1] This calculation does not account for the fact that the special education teacher did not stay for the entire 90-minute class. *See* Hearing Tr. at 100-104.

the failure to provide all of [Ms. Holman]'s specialized instruction caused her any harm." Opp'n at 6. DCPS misses the point. It is well-established that "the materiality standard *does not require that the child suffer demonstrable educational harm* in order to prevail." *Wilson*, 770 F. Supp. 2d at 275 (emphasis in original) (quoting *Van Duyn*, 502 F.3d at 822). Since proof of harm is not required under these circumstances, it follows that a material deviation from the prescribed IEP is *per se* harmful under IDEA. *See id.* The "crucial measure" under the materiality standard is the "proportion of services mandated to those provided" and not the type of harm suffered by the student; thus, the Hearing Officer's reliance on the fact that Ms. Holman graduated from high school in three years is irrelevant. *Turner*, 952 F. Supp. 2d at 41. A contrary holding would eviscerate the need for an IEP and the materiality standard because it would allow DCPS to evade its duties and responsibilities by awarding a high school diploma to every student. This concern is particularly relevant here where a child with only a "[4th] grade reading level" was able to obtain a high school graduation diploma. *See* DCPS Progress Summary.

      The Hearing Officer's decision is even more problematic because, as the record shows, Ms. Holman's academic achievement scores declined after she entered Dunbar High School. The following table provides evidence of the material decline in many of her standard scores as measured by a Woodcock Johnson III Test of Achievement (WJ-III Test):

| Academic Skill | WJ-III 2010 Test Scores 5/10/2010 (Grade Level Equivalency) | WJ-III 2013 Test Scores 5/17/2013 (Grade Level Equivalency) | WJ-III 2014 Test Scores 06/16/2014 (Grade Level Equivalency) |
|---|---|---|---|
| Letter-Word Identification | 64 (2.8) | 54 (3.2) | 58 (3.1) |
| Reading Fluency | 76 (3.6) | 73 (4.4) | 70 (3.7) |
| Calculation | 85 (5.7) | 77 (5.5) | 81 (5.9) |
| Math Fluency | 86 (6.5) | 89 (8.3) | 78 (6.7) |
| Spelling | 81 (4.4) | 73 (4.7) | 71 (4.1) |
| Writing Fluency | N/A | 82 (6.0) | 62 (3.3) |

These results prove that the failure to implement Ms. Holman's 2013-2014 IEP was harmful to her. During her last year, Ms. Holman regressed in every area but one, in which she improved only by less than half a grade level.[2] *See id.* In light of the DCPS's material deviation from the IEP and the evident decline in Ms. Holman's test results, it is perplexing that the Hearing Officer did not find a denial of a FAPE for Ms. Holman. The Court holds that the Hearing Officer's decision was contrary to law and the evidence.

Since the Court has already found that DCPS violated IDEA when it materially deviated from Ms. Holman's prescribed IEP, it need not determine whether Ms. Holman's exclusion from the May 7th and May 30th meetings also violated the statute. DCPS's failure to implement the 2013-2014 IEP by itself amounted to a denial of a FAPE.

---

[2] The Court also notes on May 17, 2013, at the end of her second year of high school, Ms. Holman received a psychological assessment. The assessment yielded a low full scale [Intelligence Quotient (IQ)] score of 67. *See* AR at 166 (2013 Psych. Evaluation).

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Ms. Holman's Motion for Summary Judgment, Dkt. 9.  Judgment will be entered in favor of Ms. Holman as follows: The Court will reverse the HOD that DCPS's failure to implement Ms. Holman's IEP was not a basis for a remedy.  The Court will order DCPS to convene one or more meetings of the multidisciplinary team as necessary to develop an individual education plan for Ms. Holman, who remains eligible for compensatory education under D.C. law until the age of 22.

A memorializing Order accompanies this Memorandum Opinion.

Date: January 28, 2016

>                /s/
> ROSEMARY M. COLLYER
> United States District Judge